## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re: | Chapter 11 |
| LIFE EQUITIES CORP., | Case No. 14-19497 (ELF) |
| Debtor. | |

## ORDER

Upon consideration of the *Motion of Debtor and Debtor-in-Possession for the Entry of an Order Authorizing Sale of Certain Property of the Estate Free and Clear of Liens, Claims, Encumbrances, and Interests Pursuant to 11 U.S.C. § 363(b) and (f) and Fed. R. Bankr. P. 6004* (the "Motion") and any response thereto; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and that this Court may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtor's estate, its creditors, and other parties in interest; and this Court having found that the Debtor's notice of the Motion and opportunity for a hearing on the Motion were appropriate and no other notice need be provided; it is

ORDERED that the Motion is GRANTED as set forth herein; and it is further

ORDERED that the Debtor is granted authority to sell the real property located at 419 N. Front Street, Philadelphia, Pennsylvania 19123 (the "Property"), free and clear of all liens, claims, encumbrances and interests, pursuant to the terms set out in this Order, the Motion[1] and the Sale Agreement, which is attached hereto as Exhibit A; and it is further

---

[1] Capitalized words not defined herein shall have the same meaning as when used in the Motion.

ORDERED that the Property will be deemed transferred to the Purchaser as of the sale closing and such transfer will constitute a legal, valid, binding and effective transfer of such Property; and it is further

ORDERED that, upon closing, the City of Philadelphia (the "City") will be paid $7,279.55 in full satisfaction of any and all of the City's claims and liens on the Property through June 30, 2015; and it is further

ORDERED that, upon closing, Fidelity National Title Insurance Company ("Fidelity") will be paid $10,000.00 in full satisfaction of Fidelity's claims and liens on the Property; and it is further

upon closing,

ORDERED that a certified copy of this Order may be filed (but is not required to be filed) with the appropriate clerk and/or recorded with the recorder to cancel any of the liens, claims, encumbrances, and interests of record, included, but not limited to, the following:

1. $305,000.00; Life Equities Corp. to Alternative Business Credit, LLC, dated March 28, 2008, and recorded April 23, 2008, as document number 51892611.

   ASSIGNED TO: Patriot Group, LLC, recorded March 17, 2010, as document number 52187787.

2. $250,000.00; Life Equities Corp. to Cohen, Seglias, Pallas, Greenhall & Furman, P.C., dated March 4, 2008, and recorded April 2, 2008, as document number 51879976.

   ASSIGNED TO: Fidelity National Title Insurance Company, recorded March 1, 2013, as document number 52604845.

3. $300,000.00; Life Equities Corp. to Adam F. Feinberg dated June 9, 2010, and recorded June 9, 2010, as document number 52221485

4. $20,000.00; Life Equities Corp. to Harry Feinberg dated April 27, 2011, and recorded May 6, 2011 as document number 52344440.

5. $180,000.00; Life Equities Corp. to Bochetto & Lentz, P.C. and Cronin Law Firm, LLC, dated January 25, 2013, and recorded February 20, 2015, as document number 52601232.

2

ORDERED that pursuant to Federal Rules of Bankruptcy Procedure 7062, 9014, 6004(h), and 6006(d), this Order shall be effective immediately upon entry and the Debtor and the Buyer are authorized to close the sale of the Property immediately upon entry of this Order.

BY THE COURT:

Dated: _____ 6 / 25 / 15 _____

Philadelphia, Pennsylvania

HONORABLE ERIC L. FRANK
CHIEF UNITED STATES BANKRUPTCY JUDGE

3

Ex. A

## AGREEMENT OF SALE

THIS AGREEMENT OF SALE (this "Agreement") has been executed and delivered on the _16th_ day of _June_, 2015 (the "Effective Date"), by and between BOCHETTO & LENTZ, P.C., a Pennsylvania corporation, having an address at 1524 Locust Street, Philadelphia, Pennsylvania, Attn: George Bochetto, facsimile no. (215) 735-2455 and any permitted assignee or designee (collectively, "Buyer"); and LIFE EQUITIES CORPORATION, INC., a Delaware corporation having an address of 419 N. Front Street, Philadelphia, Pennsylvania (collectively "Seller").

### WITNESSETH:

FOR AND IN CONSIDERATION of the mutual covenants, promises and agreements hereinafter set forth, the parties hereto, each intending to be legally bound hereby, covenant, promise and agree as follows:

1.    **SALE AND PURCHASE OF PROPERTY.** Seller agrees to sell and Buyer agrees to buy, under and subject to the terms of this Agreement, the following property (the "Property"):  (a) the real property (with improvements) known as 419 N. Front Street, Philadelphia, PA, with OPA/BRT #055010205, formerly #88-4-4489-14 (the "Property"), as denoted and described in the Deed recorded the Philadelphia Recorder of Deeds on December 5, 2002 and assigned Instrument No. 50572743; and (b) all of Seller's rights relating to the Property, including any easements or covenants arising from or appertaining to the Property.

2.    **PURCHASE PRICE.** The purchase price for the Property (the "Purchase Price") shall be Four Hundred and Eleven Thousand and Eight Hundred and Fifteen Dollars and Twenty Three Cents ($411,815.23) payable by means of a credit bid, and the satisfaction and/or release of the Mortgage and associated Note and all amendments thereto (the "Patriot Mortgage") in the stated amount of $305,000.00, executed and delivered by Life Equities to and in favor of Alternative Business Credit, LLC dated March 28, 2008 which secured the Note and which was recorded on April 23, 2008 in the Office of the Commissioner of Records of the City of Philadelphia as Document No. 51892611 and assigned by Alternative Business Credit, LLC to The Patriot Group, LLC by Assignment dated April 4, 2008, which was recorded on March 17, 2010 in the Office of the Commissioner of Records of the City of Philadelphia as Document No. 52187787 and the Judgment in the amount of $411,815.23 in the Philadelphia Court of Common Pleas at Docket No. 121200031 ("Patriot Liens").

3.    **CONTINGENCIES.**

3.1    This Agreement of Sale is expressly and unconditionally contingent upon the assignment by The Patriot Group, LLC of the Patriot Liens to Bochetto & Lentz, P.C. in a form and on terms and conditions acceptable to Bochetto & Lentz, P.C. in its sole discretion

3.2    This Agreement of Sale is further expressly and unconditionally contingent upon the approval by the United States Bankruptcy Court for the Eastern District of Pennsylvania ("Bankruptcy Court") in the Chapter 11 bankruptcy action encaptioned _In re: Life Equities Corp._ and docketed as Bankruptcy Petition No. 14-19497 of a motion ("363 Motion") to authorize a 363 sale of the Property to Buyer free and clear of all liens (including, but not limited to, the




Patriot Liens and the Bochetto & Lentz Mortgage) except for real estate taxes ("363 Sale") who intends to credit bid the value of the $411,815.23 Patriot Liens for the purchase of the Property. Seller agrees to file the 363 Motion not later than May 26, 2015.

3.3     Buyer's obligation to purchase the Property shall be expressly and unconditionally contingent upon Buyer obtaining title insurance at the ordinary rates from any title company licenses in Pennsylvania. Buyer agrees to make its best, good faith, efforts to do so.

3.4     If any one of the foregoing contingencies are not met, then this Agreement is immediately terminated and, thereafter, neither Seller nor Buyer shall have any further rights or obligations under this Agreement except for the parties' indemnification obligations set forth herein, all of which shall survive any such termination.

4.    PRE-CLOSING COVENANTS/CONDITIONS.

4.1     During the term of this Agreement: (a) except as to liens already due and owing, Seller shall keep all other real estate taxes and assessments, utility charges and other obligations that are or could become a lien on the Property current; (b) except as provided in section 9 below, Seller shall maintain the Property in its present state of repair and in substantially the same condition as on the date hereof; (c) Seller shall not grant any easements or otherwise encumber the Property, without the prior written consent of Buyer; and (d) Seller shall not enter into or extend any lease, license or other occupancy agreement for the Property (or any portion thereof) unless such lease or other agreement shall be terminable by the landlord (without penalty) prior to the Closing Date.

5.    CLOSING. If the Bankruptcy Court's Order granting the 363 Motion and approving the 363 Sale is entered on or before June 29, 2015, the Closing of the 363 Sale approved by the Bankruptcy Court (the "Closing Date") shall be on or before June 30, 2015; alternatively, if the Bankruptcy Court's Order granting the 363 Motion and approving the 363 Sale is not entered on or before June 29, 2015 but is entered on or before July 2, 2015, the Closing Date and Closing of the 363 Sale approved by the Bankruptcy Court shall be on or before Thursday, July 16, 2015. The Closing shall take place at the office of Bochetto & Lentz, P.C., 1524 Locust Street, Philadelphia, Pennsylvania, 19102, at 11:00 a.m. on or before the Closing Date.

6.    CLOSING ADJUSTMENTS. At Closing, Buyer shall pay real estate taxes, water and sewer charges and other similar expenses for the Property, if any, that are due. Buyer shall pay for the preparation of the deed and realty transfer tax, recording fees for the discharge of any mortgages or other liens, and the title company attendance fee and all search fees, title insurance premiums and other conveyancing expenses or any other tax, charge or fee that, by law, is levied, imposed or assessed upon the purchaser of real property. In addition, Buyer shall be responsible for the payment of any special assessment that, as of the Closing Date, (a) has been assessed, levied, imposed or confirmed against the Property; or (b) is a lien upon the Property. Buyer shall pay Broker's Commissions, if any, due.

7.    BROKER'S COMMISSIONS. Seller represents and warrants that the sole broker entitled to receive any commission or fee in connection with the sale of the Property is _____ and

2



that the commission owed is ___%. Buyer represents to Seller that it has not dealt with any broker or other party entitled to receive any commission or fee in connection with the sale of the Property. Seller shall indemnify and hold Buyer harmless from any and all judgments, suits, costs and expenses which such party may incur as a result of the indemnifying party's breach of the foregoing representation. This provision shall survive the Closing hereunder.

## 8. QUALITY AND INSURABILITY OF TITLE.

8.1    At Closing, Seller shall convey title to the Property by warranty deed with covenants against grantor's acts and provide Buyer with an affidavit of title and affidavit of non-foreign status, in form reasonably satisfactory to Buyer and Buyer's title insurance company. The title to be transferred shall be a good and marketable title, valid of record, and insurable at regular rates by any reputable title insurance company authorized to do business in the Commonwealth of Pennsylvania, selected by Buyer, subject only to those exceptions to title as Buyer shall have found to be acceptable. The title shall be free and clear of all liens, debts, and encumbrances including municipal liens and assessments on improvements now constructed. If Buyer obtains an outbound survey of the Property certified to Seller (a "Survey"), and an updated legal description of the Property based on the Survey, Seller shall, at Buyer's request, use such updated legal description in the deed delivered by Seller at Closing.

8.2    Promptly after the Effective Date, Buyer shall order, at its sole expense, a commitment for title insurance covering the Property (the "Title Report"). Within ten (10) days after receipt of the Title Report, Buyer shall deliver a copy of the Title Report to Seller and shall notify Seller in writing of any exceptions to title shown on the Title Report that are not acceptable to Buyer. Seller shall respond in writing to Buyer within ten (10) days thereafter only if Seller will not remove such exceptions or cause the same to be removed on or before the Closing Date. If Seller does so notify Buyer, then Buyer shall have the option of: (a) taking such title as Seller can give without abatement of the Purchase Price (except that the Purchase Price may be used to pay or discharge monetary liens of an ascertainable amount); or (b) terminating this Agreement, after which this Agreement shall become null and void, and neither party shall have any further rights or liability to the other hereunder except those that expressly survive termination of this Agreement.

## 9. LOSS OR DAMAGE TO THE PROPERTY. 
If, prior to the Closing Date, all or any part of the Property is (a) damaged by fire or other casualty or (b) subject to a condemnation (which term shall include an actual taking by eminent domain and a pending taking or a taking which has been announced by a governmental authority, which, in either case, has not been consummated), Seller shall promptly give Buyer written notice thereof. If Seller does so notify Buyer, then Buyer shall have the option of: (a) taking the Property, as is, or (b) terminating this Agreement, after which this Agreement shall become null and void, and neither party shall have any further rights or liability to the other hereunder except those that expressly survive termination of this Agreement

## 10. AS-IS; NO REPRESENTATIONS. 
The sale of the Property from Seller to Buyer is "As-Is" and Seller makes no representations or warranties whatsoever, other than those set forth specifically in this Agreement, to the Buyer with respect to the Property and any such representations or warranties are expressly disclaimed.

3

11. **DEFAULT.**

11.1    **Buyer's Default.** If Buyer shall fail to complete the purchase of the Property or shall otherwise default in the performance of its obligations under this Agreement, Seller may, as Seller's sole and exclusive remedy terminate this Agreement by written notice delivered to Buyer by on or before the Closing Date and be reimbursed reasonable out of pocket expenses related to attorney' fees in connection with this transaction or the 363 Motion.

11.2    **Seller's Default.** If Seller shall default in the performance of its obligations under this Agreement then, in such event, Buyer may, as Buyer's sole and exclusive remedy, terminate this Agreement by written notice delivered to Seller on or before the Closing Date and be reimbursed reasonable out of pocket expenses related to the title search, closing costs, and/or attorney' fees in connection with this transaction and/or any penalties paid to The Patriot Group, LLC as a result of the failure by Seller to close on the Property prior to July 16, 2015.

11.3    **Costs and Attorneys' Fees.** In the event of any litigation between the parties in connection with this Agreement, Buyer shall be entitled to recover its s reasonable legal fees and court costs if Buyer is the prevailing party.

12. **NOTICES.** All notices authorized or required herein shall be in writing and shall be considered given (a) when delivered personally against receipt; or (b) on the third business day after being sent by registered or certified mail, return receipt requested; or (c) on the next business day when sent by overnight commercial courier service with confirmation of receipt; or (d) when sent by telephone facsimile with electronic confirmation of transmission receipt; to Seller or Buyer at their respective addresses set forth above in the heading of this Agreement, or to such other address as a party may specify by notice pursuant to this section, with copies sent to the following addresses:

12.1.1        Copies of notices to Seller shall be sent to: Thomas Bielli, Esq., O'Kelly Ernst & Bielli, LLC,1500 Walnut Street, Suite 900, Philadelphia, PA 19102, 215-543-7182, Fax: 215-525-9648.

12.1.2        Copies of notices to Buyer shall be sent to Albert Belmont, Esquire, Bochetto and Lentz, P.C., 1524 Locust Street, Philadelphia, PA 19102; facsimile no. (215) 735-2455.

12.1.3        Notices given to or sent by a party's attorney as provided above shall constitute valid notice to or by such party for purposes of this Agreement. Notices to the Escrow Agent shall be sent by one of the methods identified above to its address in section 2.1, and contemporaneous copies of all such notices shall be sent to the other party.

13. **RELEASE OF THE PATRIOT GROUP, LLC AND BOCHETTO & LENTZ, P.C.**

13.1    Upon approval of the Court's Order of the 363 Sale, Seller shall deliver to the Buyer General Releases (one with respect to The Patriot Group, LLC and one with respect to Bochetto & Lentz, P.C.) executed and delivered by Life Equities and its officers and/or owners releasing and discharging any and all claims or actions of any nature whatsoever by Life Equities and its present and/or former officers and/or owners, etc., against The Patriot Group, LLC and

4

 

Bochetto & Lentz, P.C. and/or their  present or former parent, subsidiary and/or affiliated companies or entities, and all of their principals, partners, officers, directors, members, employees, agents, servants, insurers and attorneys, etc., in form acceptable to The Patriot Group, LLC and Bochetto & Lentz, P.C. and to be held in escrow by an escrow agent designated by The Patriot Group, LLC and Bochetto & Lentz, P.C. pending Closing.

14.   **MISCELLANEOUS.**

14.1   This Agreement shall be binding upon Seller and Buyer and their respective heirs, devisees, personal representatives, executors, administrators, successors and permitted assigns.

14.2   This Agreement shall be governed by and construed under the laws of the Commonwealth of Pennsylvania, without giving effect to principles of conflicts of law.

14.3   This Agreement constitutes the entire agreement between the parties, all prior promises, undertakings, representations, agreements, understandings and arrangements relative thereto being merged herein. No modifications of or amendments to the terms of this Agreement shall be binding unless in writing and signed by the parties hereto. Except as expressly provided herein, the provisions of this Agreement shall not survive the Closing or other termination of this Agreement.

14.4   The invalidity or unenforceability of any provision hereof shall in no way affect the validity or enforceability of any other provision.

14.5   The captions and headings used herein are for reference only and shall in no way be deemed to define, limit, explain or amplify any provisions hereof. When the context of this Agreement so requires, nouns appearing in the singular shall have the same effect as if used in the plural and vice versa. All recitals and exhibits attached hereto are deemed to be part hereof.

14.6   This Agreement may be executed in any number of counterparts, or with counterpart signature pages, each of which when so executed shall be deemed to be an original and all of which taken together shall constitute one and the same agreement. This Agreement may be executed by facsimile signature.

14.7   Should any date, on or before which the performance of any act (including the making of any payment) is required under the terms hereof, fall on a Saturday, Sunday, legal or generally recognized religious holiday in the Commonwealth of Pennsylvania, the date for performance shall be extended to and shall occur on the next succeeding business day.

14.8   Time is of the essence with respect to each and every provision of this Agreement.

14.9   This Agreement shall be deemed drafted by both parties and their counsel and shall not be construed against either party as the drafter.



IN WITNESS WHEREOF, each party has caused this Agreement to be executed on the applicable date specified below, but effective for all purposes as of the later of such dates, which shall be the Effective Date set forth in the heading hereof.

WITNESS/ATTEST:                        SELLER:

                                       LIFE EQUITIES CORP.

_____              _____

                                       Larry Irwin, on behalf of Life Equities
                                       Corp.
                                       Date: ____6-16-15____

WITNESS/ATTEST:                        BUYER:

                                       BOCHETTO & LENTZ, P.C.

_____              _____

                                       George Bochetto, on behalf of Bochetto &
                                       Lentz, P.C.
                                       Date: ____6-16-15____

6